Good morning, and may it please the Court. My name is Taylor Yamahata, and I'm here with my colleague Nikki Mambarzadeh on behalf of our client, Joseph L. Wallin. With the Court's indulgence, Ms. Mambarzadeh and I will be splitting our time and dividing the issues. I will speak for the first six minutes regarding the District Court's abuse of discretion, and Ms. Mambarzadeh will speak for the next six regarding the correct application of Wilborn and the proper interpretation of Section 1915. And we would like to save three minutes for rebuttal. Here, the District Court abused its discretion by failing to properly apply the Wilborn factors, which require the District Courts to first assess the likelihood of success on the merits, and second, the capacity of the litigant to articulate their claims given their complexity. And here, the record reflects that the District Court outright failed to consider the first factor. Instead, as reflected on page 8 of the record, it held that the Court cannot determine Mr. Wallin's likelihood of success on the merits. That was an error. As the Court held in Wilborn, neither factor is dispositive, and both must be viewed together before the Court can reach a decision. When the District Court made the first appointment, first appointed Johnson, did the Court make an assessment of the likelihood of success on the merits? Your Honor, in the underlying order appointing counsel, the Court found that Mr. Wallin's likelihood of success on the merits stemmed from the fact that his claims had survived summary judgment. And it's important to note here that nothing had changed between that underlying appointment of finding that he had succeeded on the merits at summary judgment and then the District Courts later opinion on that matter. So what do you think the District Court meant in this second order when it declined to appoint second counsel? Your Honor, I can't claim to know what the District Court intended in their decision, but from our understanding here, it's our position that the District Court just failed to apply that factor, which is an abuse of discretion. And as the panel noted in its memorandum disposition, Right v. Director of Corrections, the District Court's failure to consider that plaintiff's likelihood of success on the merits in their opinion itself constitutes an abuse of discretion. If the District Court had changed its opinion, which is entitled to do so, it needed to be reflected within the record itself and supported by the evidence. Well, why can't we just assume that he incorporated the prior likelihood of success analysis from the first appointment? So, Your Honor, we can't assume that because of the fact that the District Court explicitly stated the Court cannot determine Mr. Wallin's likelihood of success on the merits. And so we can only assume. We should take him for what he said. We should take we should take his. Yes, Your Honor, that's our position that his explicit refusal to consider that factor was an abuse of discretion. Well, then isn't it isn't that a consideration of the factor in itself? Your Honor, it's our position that refusing to consider the factor is a misapplication of the law. And so that itself would be an abuse of discretion. Well, I mean, can't he just say, like, I can't determine it here, but the other factor just are so overwhelming that I'm going to deny the appointment. Well, as Wilburn articulated, both factors have to be considered. Neither is just positive. But to the Court's point that here had the District Court properly considered that figure, it would have found it in his favor. But ultimately, also, it's our position that the District Court failed to actually make a finding in terms of his ability to articulate his claims as well, given their complexity. It's our position that the District Court misapplied the standard and held that Mr. Wallen's disagreements with his counsel indicated that he had demonstrated, quote, an ample confidence in his ability to litigate this case. But there's no case law that supports the proposition that a pro se plaintiff's confidence alone supports of their ability to articulate complex legal claims. So what are you asking for in terms of relief? Your Honor, we're asking that the Court vacate the judgment and reappoint and with instructions to the District Court to reappoint pro bono counsel. Let's see. What if we conclude that the District Court made an erroneous determination by not considering likelihood of success and integrate them together and think through and point out his prior order? Don't you think the District Court should be given a chance to do it again? Your Honor, it's our position that as this Court held in Agamemnon that this Court can look at the record itself and determine that Mr. Wallen should have been appointed counsel given the fact that he had met that threshold of being able to establish the likelihood of success on the merits. He survived summary judgment and then here the District Court had had its underlying finding that Mr. Wallen's brain injury along with the complex legal questions to be resolved at trial constituted exceptional circumstances. Just because one survives summary judgment doesn't necessarily mean that you have a strong case. It means that there's a tribal issue of fact that the District Court can't resolve. Yes, Your Honor, and it's on our position that surviving summary judgment alone indicates that a litigant should be appointed counsel. But here the District Court found that he had survived summary judgment and that Mr. Wallen had then at least had material facts that supported his claim that was factually and legally sound, and then that taken together with the fact that he had a traumatic brain injury, that these were complex legal counsel questions, and then that he was proceeding to a jury trial, that he should have been appointed counsel here. And it's important to note that that was what was the Court found in its underlying order appointing counsel. He said, quote, the effects of his brain injury along with legal questions to be resolved at trial constituted exceptional circumstances, end quote. So let me ask you this. If we were to agree with you and to say the District Court abused its discretion, does he automatically get a new trial? If you agree with us and find that the District Court did in fact abuse its discretion, it is our position that the District Court should vacate the judgment because he should have been appointed counsel before. He gets a new trial. He gets a new trial. There's no harmless error analysis? Yeah. So it's our position that this error was clearly not harmless in the fact that Mr. Wallen suffered significant prejudice at trial. He misapplied the law. He didn't understand the burden of proof. He became so overcome with his emotions at trial because of his traumatic brain injury and PTSD that he had to take a break. He wasn't able to get in crucial evidence otherwise or to have to be able to establish causation between his traumatic brain injury and the damage that he suffered. And so this clearly wasn't a harmless error. Do you want to say one minute for rebuttal? We were planning on saving that time for rebuttal together. Oh, I see. Okay, go ahead. I have a question, please, counsel. Your opening brief discusses what happened at trial, both in the background section on pages 8 through 21 and then also in the argument section on page 37. My question relates to the proper record for us to consider the District Court's decision. Shouldn't we restrict our review to the record up to the point in time at which the District Court denied the motion for substitution of counsel? Yes, Your Honor. That is actually, that is how your analysis should go down in terms of the assessment of the Wilburn factors. We included the sections regarding prejudice only to demonstrate that this was not a harmless error and that Mr. Wallen did, in fact, suffer significant prejudice. Thank you. I have seemed to be saying that the Wilburn panel noted, quote, serious doubts, end quote, over the United States versus Madden's extension of Weller. Now, Weller was the inform a papyrus case describing the standard under 1915 subsection B. And in Madden's application of the Weller standard to the pro bono provision of the same statute, so that's the 1915 E1, the Wilburn decision, I don't see describing as that extension as, quote, having serious doubts over it. But I want to make sure that I understand your reference in your brief. Where does the serious doubts, quote, come from? So respectfully, Your Honor, I believe that my colleague will be able to touch on that more. However, I believe it's located within a footnote. To that opinion, and it states that there's the incoherence of the test in terms of if a litigant does survive summary judgment, then how can, or if they have demonstrated success on the merits, that makes it inherently difficult, and it's actually a catch-22 to be able to prove that they don't have the capacity to litigate their claims. Thank you. Thank you. Thank you, Counsel. Good morning, Your Honors. May it please the Court, Niki Mammarzadeh. Just to pick up where you left off, Judge Baggio, that is Wilburn footnote three that states, we question how a court reasonably can expect a strong showing by a 1983 claimant on the likelihood of success prong when it is manifestly unlikely that a pro se petitioner involved in a complex case which he cannot litigate will be capable of making such a showing. And we agree with the Wilburn court that, you know, there is this friction in the Wilburn test, and Your Honor is correct in pointing out that this was, Wilburn derives from Weller v. Dickinson, which lays out an exceptional circumstances test for pleading in form of paupers. But other circuits in their tests for granting counsel under Section 1915 do not require an exceptional circumstances showing, and I can certainly answer any questions that the panel has about those tests. And while it is our position that the Wilburn test warrants reworking en banc, we believe that Mr. O'Wallen should prevail under the existing framework. As my colleague already mentioned, the fact that Mr. O'Wallen's claims had survived summary judgment and advanced toward trial show a sufficient likelihood of success in the merits, and it is our position that Mr. O'Wallen did not have the ability to articulate his claims in light of the complex legal issues. There was an undisputed traumatic brain injury. He was litigating a 1983 deliberate indifference claim, which this circuit has recognized as being complex. The case was advancing toward trial. No, let me ask you a question. If he wins under our current test, then if it's not broke, why should we fix it? You shouldn't. If he wins under this current test, we would welcome that remedy and that relief. Our position is that if Mr. O'Wallen's case, which is so exceptional, does not satisfy this test, then the test does need reworking. My problem is, you know, 1915 is the statute that governs all this, and it just says may appoint counsel. It doesn't give any restriction. So it seems to give courts complete discretion. And so what's wrong with making it, you know, a higher threshold? Sure. Yes, Your Honor. And while it does not, it permits courts to, it does not permit courts to require appointment of counsel. You're correct. It only says may. The language in Mallard says construing 1915E to allow courts to ask but not compel lawyers to represent indigenous litigants does not render 1915 a nullity. So you're absolutely correct that it only allows for a discretionary appointment of counsel. But we agree with the Third Circuit in Tabron v. Grace that says that exceptional circumstances are not supported by the statute. Well, how is that? Because if it's just a may, it's completely discretionary. How is it not supported? Sure. Because the statute authorizes courts with saying may, it does not require a showing of exceptional circumstances, let alone a showing of success on the merits, plus a heightened inability to support their claims. If you look at the Second, Third, Fourth, Fifth, Seventh, Eighth, Eleventh, and D.C. circuits, they all allow for a more nuanced approach and give the district judges more discretion and more factors to consider in determining whether counsel should be appointed. For example, the D.C. circuit, while it does, you know, consider whether a claim is frivolous, and that kind of gets at the merits analysis that we believe the Wilborn Court is laying out, it also allows for judges to consider whether appointment of counsel would be beneficial to the court, which is something that the Ninth Circuit does. Does our test preclude that? It does. It just says that there's two factors you have to consider. It doesn't mean that you can't consider other factors. That's true, Your Honor. However, our review of the case law in the circuit does not really allow for more flexible determinations. The analysis has tended to focus solely on likelihood of success in the merits and the ability, excuse me, the litigants' ability to articulate their claims. Let me ask you this. How is a district judge supposed to decide or determine that there's a likelihood of success? So, our position is that, you know, taking that factor in a vacuum, so to speak, you know, something like a litigant surviving summary judgment definitely tends to show that the claims are not frivolous, that there is, as Your Honor pointed out, a material issue of fact that should be resolved at trial. But this court and its district courts have used even lower standards. For example, in some cases, I believe it's, I don't have it in front of me, but they're surviving a motion to dismiss, establish a likelihood of success in the merits. I think that was a Pasin v. Correa, which is from the District of Hawaii. But you would have like a bright line rule anytime you survive a motion to dismiss, counsel should be appointed? No, absolutely not, Your Honor. There should not be a bright line test. However, you know, surviving summary judgment or surviving motion to dismiss may serve as a guidepost just for establishing that first factor. The court will always still have to look at the second factor of whether the litigant has the ability to articulate their claims in light of the complex issues. And that gets at the tension, again, that the Wilbour Court pointed out in footnote three, how likely is it that someone will be able to establish likelihood of success in the merits and also have a very difficult time litigating their own case? We believe that Mr. Wallin did demonstrate that here in light of his... Let me ask, is the problem here that the district court judge said, I can't determine likelihood of success? I can't, you know, I just... Yes, that is the principal problem, Your Honor. And it is our position that that on its face is a dispositive, that the district court failed to make an analysis that abuses discretion and that the case should be reversed and remanded. We also believe that based off the record, it's clear that Mr. Wallin did show a sufficient likelihood of success and didn't have the ability to articulate. So this court should instruct for the district court to appoint counsel. Suppose, you know, despite the fact that the district court judge had made a determination that he should survive summary judgment on his one claim or two claims, the district court judge had said when denying, relieving Johnson and denying the second appointment, he had said, well, you know, the first time I determined that there was likelihood of success, you know, but now I've thought more about this case. I've looked at the record. You know, I remember, I recall from my handling the summary judgment and, you know, now I don't, I don't see, I don't think he's likely, you know, he's got a difficult case and he might not apply. He might not. I don't think he's going to. There's a real likelihood of success on the before. And so now I, I just, I don't think it's necessary. He had counsel and didn't work out. We're just going to go forward as a pro se. You wouldn't argue that that was an abusive discretion, would you? That's probably what he should have done, right? Exactly. Your Honor. That is what he should have done. As this court, a prior panel of this court found in Hodges, that was a case denying the appointment of a third pro bono counsel. The district judge didn't make detailed findings explaining just as your Honor, you know, explained in this hypothetical, very similar findings laying out why the circumstances had changed, why counsel was not allowed to appoint necessary, excuse me. So in that case, you're absolutely right. We would not argue that's an abusive discretion. I see that my time has expired. I would like to keep some time for rebuttal. I'll give you time for rebuttal. Thank you so much. Good morning, Your Honors. May it please the court. I'm Assistant Attorney General Julie Tarley for the State Defendants. Pro se civil litigants do not have a right to counsel, except in exceptional circumstances. More importantly, they do not have a right to counsel of their choosing. Four months after the district court appointed Uallen counsel, he asked that that counsel be withdrawn from the case because he wouldn't file the motions that Uallen wanted him to. Uallen glosses over this fact in his argument, but it was central to the district court's decision. And based on the circumstances before it, at the time it made that decision, the district court did not abuse its discretion in declining to reappoint Uallen counsel. This court should affirm the jury verdict. The district court stated the correct rule and analyzed each rule and the evidence before it that it applied to each factor. That is not an error. Exceptional circumstances is a factor test, and those factors are weighed together. They're not dispositive. Discretion is inherently nuanced, going to Uallen's argument this morning. And a factor test is just that, Your Honor. It's not exclusive of other factors that the court wants to consider, but the Wilborn test puts forward two factors that it must consider at a minimum. Neither factor is dispositive. Those are weighed together at the time of the decision. The district court did acknowledge its prior finding that Uallen had a brain injury that warranted counsel and acknowledged that its prior exceptional circumstances finding. However, it also found that, quote, subsequent developments have altered its analysis. That's one ER eight. Uallen disagreed with his appointed counsel's strategy and tactics, which the district court found that demonstrated his ability to articulate those claims. This test is not an ability to litigate the claims that the pro se individual is bringing forward, but an ability to articulate them. It is true that the court stated that it could not determine Mr. Uallen's likelihood of success on the merits, but that is not the same as failing to consider that factor. How should we consider that factor? I agree that the fact that he mentioned it that he considered it, but how did he weigh it? The court weighed that essentially that it wouldn't comment on it. It's very common in the case law that the district court states that it won't comment on the likelihood of success on the merits, or it's not going to weigh, put its own thumb on the scale of what those merits are, and that's essentially what the district court did here. Do you think he made a determination when he first appointed counsel that there was a likelihood of success on the merits? I believe the trial court stated in that order that it wouldn't comment something along those lines. Same thing? Yes, it did the same sort of analysis, Your Honor. Although at least he had the summary judgment determination that he had made earlier. Correct. The court acknowledged that in its order appointing counsel four months before the order on appeal, and again, the court also acknowledges the summary judgment success in its order as well. So would one way to be interpreted that is that the district court thought that this factor was just a wash, and that it's all on the other factor? I don't know that the state defendants would agree that it was a wash, Your Honor, but the district court did heavily rely on Mr. Uhalen's ability to litigate his claims in this case based on his... In one way you could say it is even if there's a likelihood of success, the other factor is just so strong in denying... Is that one way to articulate it? Yeah, the state defendants would agree with that, Your Honor. That we should assume that that's what he meant? I don't think the court needs to assume. That's what the trial court stated in its order that, you know, it acknowledged its previous order appointing counsel, but the fact that Mr. Uhalen was so strongly stating his own desires and his own strategy demonstrated that he had the ability to articulate his claims combined with his previous activity over the three years duration of this case. And the trial court was very familiar with Mr. Uhalen and his articulation at this point in the case after it had been going on for three years. The factors... Suppose the district court had said, you know, looks like he's got a pretty strong case. But nonetheless, you know, he really doesn't need a counsel. If you read his motions and whatnot, he can articulate his claims at trial. That could potentially survive abuse of discretion, Your Honor. Abuse of discretion is a lenient standard of review and it is intentional that way so that the district court who is in the best position to evaluate the litigant before it can make that decision. It just, it depends on the person and the individual in front of it and not an abstract situation. You know, I recognize that he filed a number of motions and he made requests and whatnot, but, you know, I read it and I shouldn't chuckle, but I read his... I'm not going to say I read it all, but he filed like an eight page handwritten letter of like a motion to the court. And, you know, I'll be honest with you, I got through about three pages and I couldn't get through the rest of it. So I don't... What do I make of that? I mean, it's very difficult. First, two responses to that, Your Honor. First of all, it isn't for this reviewing court to substitute its own judgment for how the district court evaluated Mr. Uhalen's activity in the case. But second of all, what is important to consider in those motions is that he repeatedly stated his claims, he cited evidence to support those claims and the law that went with them. Those are the basic levels of articulating his position and how he believed that he could succeed in this case. So, yes, I would say that Mr. Uhalen's filings are fairly characteristic, frankly, of incarcerated individuals and their activities in these cases. That doesn't make this case an exceptional circumstance where so much so that the district court abused its discretion in evaluating Mr. Uhalen's ability to articulate. Let me ask you this, would it if the district court had determined that he has a good case, but that he needed an expert to present his case? I believe the court had the opportunity to do that under... The rule is escaping me right now, Your Honor. But the court could have appointed him an expert. That isn't the issue on appeal. Hypothetically, I'm just trying to understand how you size this up. The district court could have done that, but I don't believe Mr. Uhalen asked for that. I don't recall the record on that particular issue. But Your Honor brings up a good point. There are a multitude of factors that Mr. Uhalen wishes to bring to the forefront that happened at trial, which should be in a harmless error analysis, but not the abuse of discretion side of the equation. In full transparency, there is no case directly on point about how this court is to evaluate if the court believes that the trial court abused its discretion, what happens after that. However, there are two cases in Uhalen's brief that he relies on, Agamon and Wright. In Agamon, the Ninth Circuit reversed a verdict. However, it also held that the petitioner's complaint was incorrect. It was essentially doomed from the beginning. And in Wright, the court reversed on the merits argument. So the jury verdict was going to be reversed regardless of the abuse of discretion question. And in that case in Wright, there was no explicit consideration of the level of harm required before reversing the jury verdict. The state defendants assert that this court should not substitute its own judgment for the trial court. So that if this court believes that the trial court erred by either stating the ruling correctly or not analyzing the factors correctly, that the trial court should be given that opportunity to do so. And then if at that point, the district court believes that Mr. Uhalen should have had counsel, perhaps that is when the jury verdict could be vacated and he would be awarded a new trial. But... Excuse me, counsel. But isn't the record fixed in time in terms of the time at which the district court denied the motion for substitution of counsel such that the record is what the record is, and that this court upon review of that record is in a position to adequately assess whether there was a sufficient record for the district court to deny substitution of counsel under the Wilburn factors? Because this would go along with what Judge Paz was mentioning regarding the court on the ability prong of Wilburn and the district court's finding that the plaintiff had confidence in his ability versus what a lot of the cases talk about, and that is the court's assessment of the plaintiff's ability, not his confidence in his ability, but his actual ability. And let me add one other layer to that, and I appreciate this is a becoming a multi-layer question, but that in this particular case in which the plaintiff's ability may have been impacted by a traumatic brain injury that was the basis of his original claim. So how do we tie all these things together and make that decision on this record, please? Let's see if I can wrap all of that together, Your Honor, and please let me know if I missed anything. First of all, there are no magic words that a trial court is to say in order for this court to find that a trial court abused its discretion. It stated the correct rule and it chose the evidence that it applied to each factor, and that is adequate under the abuse of discretion standard. As to, I'm sorry, Your Honor, can you remind me which direction you would like me to go? So I appreciate that, and I think that what I was trying to figure out was in terms of assessing the record and whether this court is in a position to decide whether there's a basis for the court to order appointment of counsel or whether it should be remanded. If we are just looking at the record up to the decision on denying substitution of counsel, why does it need to go back to the district court for further consideration of that when we already have the record before us? I see. Yes, I agree, Your Honor, that the issue before the court is whether there was evidence to support the trial court's ruling at the time it made its decision and whether the evidence that it stated in its order is adequately supported by the record. And so, again, the word confidence might not be the most artful word the trial court could have used, but that doesn't mean that it misapprehended the record and Mr. Uwalam before it such that a jury verdict should be reversed because of that single word. In other words, you'd say under these circumstances, there still has to be some consideration of whether there was prejudice or whether it was harmless? If the court is inclined to find that the trial court abused its discretion, then the question is what level of harm must Uwalam show in order to justify reversing the jury verdict and what happened at trial and after the trial court's decision not to reappoint counsel goes to harmless error, not the abuse of discretion standard to do otherwise would be engaging in hindsight analysis. And so that's not the role of this court. And I did want to mention quickly that the case law about medical conditions make it clear that the condition itself must be connected to the ability to articulate his claims and that the here the district court did acknowledge the brain injury in his in the order declining to reappoint counsel, but analyzed Mr. Uwalam at that point in time as having the ability to articulate given his strong stance about where he wanted the case to go, which motions he wanted filed, et cetera, et cetera. Unless the court has any further questions, let's not ask the court to affirm the jury verdict. Thank you. Thank you, counsel. We'll give you three minutes. Thank you very much, your honors. I just want to address a couple of points first about this discussion of Mr. Uwalam's abilities and his strategy. Here, the district court judges finding that Mr. Uwalam had confidence because of his desire to pursue certain motions was also an abuse of discretion because it was unsupported by the record. In fact, the district court citation that it used to support its position that Mr. Uwalam was confident to proceed without counsel did not actually support that proposition. What Mr. Uwalam actually said, and this is an excerpt of a record, page 441, was that he would proceed without counsel if the court wouldn't appoint one, but he believed that the court would uphold his prior finding because of his traumatic brain injury. I thought you cited the fact that Mr. Johnson would not file motions that Mr. Arulan asked him to file. Yes. That does demonstrate confidence. That demonstrates his confidence, but to that point, your honor, in a minute order in July of 2023, after Mr. Johnson had been withdrawn, that's an excerpt of record 888, the district court denied all of those motions that Mr. Uwalam refiled himself. Whatever strategy or confidence he may have had was not meritorious and did not reflect his ability to articulate. While it may have reflected his confidence, but as Judge Baggio pointed out, confidence is not a suitable proxy for ability, just as ability may not be a suitable proxy for confidence. The next point I want to make is that the traumatic brain injury is clearly connected to his ability. There is, as my friend on the other side pointed out, there is not much case law on this point, but it is our position that a litigant who has a traumatic brain injury inherently will have more difficulties litigating than a litigant without those. That also brings me to my next point. I want to clarify that the government does misstate the standard under Williborne. The inquiry here is not whether Mr. Uwalan's case is more exceptional than another pro se incarcerated plaintiff litigating a section 1983 claim. The inquiry is just for any civil litigant in any civil trial. And as a matter of fact, one of the cases that the government cites, Harvey versus Means from 2025, was an application of Williborne in this circuit regarding a case with the Hague Convention. So it's really important to make sure that we have our common denominator clear. It is not for any pro se 1983 claimant. That's not the sole universe of Williborne. It's for any civil claim. And lastly, I want to talk about abusive discretion. And this court has held in Chang that an abusive discretion occurs if the court applies law to facts, which while the facts are not clearly erroneous, the court rules in an irrational manner. And that is our position of what happened here. As I've mentioned, Mr. Uwalan's and the traumatic brain injury remained. And with that, thank you. And we ask that you reverse and remand. Thank you very much. Thank you, counsel. And thank you, counsel, for your pro bono representation of this excellent job and excellent job on both sides of the aisle. But we appreciate it. The next case for argument is Rivera versus Anderson.
judges: PAEZ, BUMATAY, Baggio